OPINION OF THE COURT
Lewis L. Douglass, J.
In September of 1990, when the defendant was 19, he was showing off his gun to his girlfriend, and believing he had removed all bullets, put the gun to her temple and pulled the trigger. All the bullets were not removed and she died instantly.
The defendant was charged with manslaughter in the second degree, reckless manslaughter. He pleaded guilty to the charge and was sentenced to two to six years. *669 The defendant was born in Jamaica and is a lawful permanent resident. When he applied to the Parole Board, he was released on the first eligible date, but because of his immigration status, the United States Immigration Service initiated proceedings to deport the defendant on the grounds that reckless manslaughter is a crime involving moral turpitude. He is now being held in a deportation center in Louisiana.
The defendant, wishing to avoid deportation, now asks this court to vacate the plea to reckless manslaughter and enter a plea to criminally negligent homicide. He argues that when the plea was entered none of the parties including the District Attorney, his lawyer nor the Judge ever contemplated that the episode involved the kind of moral turpitude that would result in his deportation.
The District Attorney first argues that the parties must have known of the possibility of deportation, and since the fact that the defendant was an immigrant was contained in the probation report. But none of the parties could have believed that this was an intentional act involving moral turpitude, since no Judge and certainly no District Attorney would agree to a two- to six-year sentence for a killing that was either intentional or the result of depraved behaviour. Not only is it obvious from the two- to six-year disposition that the shooting was accidental, but the victim’s mother submits an affidavit in support of his application by the defendant, in which she agrees that the shooting was accidental. Therefore, this analysis assumes that all parties viewed this as a tragic accident that required punishment of two years in prison, but the parties never contemplated that the act involved moral turpitude or that the plea would lead to the defendant’s deportation. On that assumption the question becomes, what is the consequence of the failure to tell a 19 year old who accidentally shoots his girlfriend that a plea to manslaughter, as opposed to the lesser included plea of criminally negligent homicide, would result in his deportation.
The District Attorney then argues that appellate cases have uniformly held that the possibility of deportation is a collateral issue and therefore, if the plea is otherwise sufficient, the possibility of deportation is not grounds to disturb the plea. Our law, however, is not simply a collection of rules, but rather the rules are read against the factual background which gave rise to those rules. The factual content of all of those cases which hold that the failure to tell a defendant of *670 the possibility of deportation is collateral and, therefore, not a ground to disturb the plea, is distinguishable from this case, in that all of those cases involved episodes where the defendant intentionally violated the law or where the acts were intrinsically immoral. People v Avila (177 AD2d 426) involved the sale of drugs. People v Dor (132 Misc 2d 568) involved manslaughter, that is the intentional infliction of injury. United States v Parrino (212 F2d 919) involved conspiracy to kidnap. United States v Russell (686 F2d 35) and United States v Gavilan (761 F2d 226) involved the intentional distribution of drugs. In these situations a defendant would have had the reasonable expectation that since the episode to which he pleaded involved the intentional breaking of the law or an act universally recognized as involving intrinsic immorality that serious consequences might flow from the plea.
But here the challenge is to determine what principle is to be applied to an episode which was not intentional and did not involve moral turpitude. Guidance can be found in those cases which describe the obligation of a Trial Judge when a plea is taken. The basic principle is found in People v Harris (61 NY2d 9) which holds that the Trial Judge is not required to make any particular recital, but is required to tell people what rights they are giving up. In recognizing that the Trial Judge is not required to recite a particular catechism, People v Harris (supra, at 19) comes to a plain and simple conclusion, " 'make sure [that the accused] has a full understanding of what the plea connotes and its consequence[s]’ ” (citing Boykin v Alabama, 395 US 238, 244). It is one thing not to tell a drug dealer or a person who intentionally causes serious injury that the plea may involve other serious consequences such as deportation, but it is quite another thing not to tell a 19 year old who thought, as did all of the other parties involved in the proceeding, that he was admitting to a terrible accident, that consequences of the plea would result in deportation — certainly a major consequence to a 19 year old whose family lives in New York. And indeed a consequence labeled by the United States Supreme Court in Fong Haw Tan v Phelan (333 US 6, 10) as "a drastic measure and at times the equivalent * * * [to] exile” and Mr. Justice Jackson described Jordan v De George (341 US 223, 232 [dissenting]) as a "life sentence of banishment.” It might be argued that where the defendant is represented by a lawyer, the court has no obligation to advise the defendant when he or she enters a plea. But that issue was resolved in the Boykin and Harris holdings. In *671 those cases the defendants were represented by a lawyer. But nevertheless, the United States Supreme Court and the Court of Appeals both held that the court had an obligation to tell the defendant of the consequences of the plea. The dispute in those cases was about how much detail the court was required to provide. The Boykin and Harris discussions would not have been necessary if the fact that the defendant had a lawyer relieved the court of its obligation, the plea would simply have been upheld on the grounds that the defendants had lawyers. To suggest that this plea meets constitutional muster would be to place form over substance. Most people probably know that they are not required to plead guilty and that their lawyer can cross-examine witnesses and they can only be found guilty by the jury. To hold that this plea meets constitutional muster would compel the astonishing conclusion that to tell a defendant what most people probably know is more important than telling a defendant who pleads to what he thought was a terrible accident, that the plea may result in his permanent expulsion from his home and the permanent separation from his family. Such an outcome, in my view, would violate the ultimate command of our Constitution that courts not deprive people of liberty without the fundamental fairness embodied in our law’s understanding of what due process is all about.
Whenever a new rule is announced, there is concern about its impact on the over-all operation of the criminal justice system. I do not suggest here that the law requires that every defendant be told about the possibility of deportation. What I hold is that where the facts surrounding the episode to which defendant pleads would not suggest to a reasonable person that the plea involves an admission of grossly immoral activity then, in those rare cases, the defendant should be told that even though what he describes to the court does not involve moral turpitude, he may nevertheless be deported, if he pleads guilty.
The defendant asks the court to substitute the plea to reckless manslaughter, to a plea to criminally negligent homicide. I do not believe that a Trial Judge has the power to make such a substitution, and even if I did, I would not. If the District Attorney asserts that the episode involved moral turpitude and this is disputed by the defendant that ought to be put before a jury.
*672 Because I believe the defendant could not have anticipated that his plea would have resulted in deportation, I am prepared to return defendant to status quo ante by vacating the plea and setting the matter down for immediate trial.